UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIEGO ALBERTO SIERRA GUERRERO,<br>Petitioner,<br>v.<br>WARDEN OF ADELANTO ICE PROCESSING CENTER, et al.,<br>Respondents. | Case No. 5:26-cv-05452-KES<br><br>ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I. INTRODUCTION

Diego Alberto Sierra Guerrero ("Petitioner") filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Respondents answered the Petition ("Answer" at Dkt. 10) and filed a supplemental brief at the Court's request ("Resp'ts Suppl Br." at 13). Petitioner was appointed counsel and filed a counseled Reply in support of the Petition ("Reply" at Dkt. 18). The parties have

consented to the jurisdiction of the Magistrate Judge. (Dkt. 9.) The Petition is granted and Respondents are directed to immediately release Petitioner from custody.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Entry into the U.S. and Release from ICE Custody (March 2023-September 2026).

Petitioner is a native and citizen of Colombia. (See Pet. at 9 (Petitioner's Colombia passport).) He entered the U.S. without inspection on March 20, 2023. (Pet. at 6.) On March 23, 2023, he encountered Border Patrol Agents and admitted entering the U.S. illegally. (Answer Ex. A / Dkt. 10-1 at 3-4 (DHS Form I-213, Record of Deportable/Inadmissible Alien).) Petitioner stated that he was entering the U.S. "to seek protection from a criminal organization in his country who has been threatening to cause him physical injury." (Answer Ex. A / Dkt. 10-1 at 3-4 (DHS Form I-213).)

Soon after entering the country, he was taken into immigration custody and placed in removal proceedings. (Pet. at 6.) See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 246-916-795 (Colombia), last accessed Nov. 2, 2026) (indicating Petitioner's removal proceedings began in April 2023).

On May 4, 2023, ICE released Petitioner from custody on an order of supervision ("OSUP"). (Pet. at 6.) It appears that, at some point, he was enrolled in ICE's Intensive Supervision Appearance Program ("ISAP"). (Resp'ts Suppl. Br. at 5, ¶ 1; id., Ex. A (notice to appear at Sept. 2, 2026 appointment, telling Petitioner to "ask for ISAP").)

Over the last three and a half years, Petitioner alleges that he has "made every effort to comply with [his] ICE appointments and the requirements related to [his] immigration case," has "continued pursuing [his] immigration proceedings and asylum process," and has "established personal and family ties in the" U.S.

(Pet. at 6.) In 2025, he was granted employment authorization to work in the U.S. through 2030. (Pet. at 6; id. at 10 (employment authorization card).) He has a California driver's license. (Pet. at 12 (the license).) He has no criminal convictions. (Pet. at 6.)

**B. Arrest for Domestic Violence (August 2026).**

On August 9, 2026, Petitioner was arrested for domestic violence with injury under California Penal Code § 273.5(a). (Answer Ex. A / Dkt. 10-1 at 3 (DHS Form I-213).) That section of the penal code makes it a felony to "willfully inflict[] corporal injury resulting in a traumatic condition upon" the offender's spouse, cohabitant, or certain family members. Cal. Pen. Code § 273.5(a)-(b); see also id., § 273.5(d) (defining "traumatic condition" as "a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force").

It is unclear whether criminal charges were ever filed based on this arrest and, if so, whether they remain pending.

**C. Current Detention by ICE (September 2026-Present).**

ICE received notice of this arrest and determined that it subjected Petitioner to mandatory detention under 8 U.S.C. § 1226(c), as amended by the Laken Riley Act. (Answer Ex. A / Dkt. 10-1 at 3 (DHS Form I-213).)

On August 26, 2026, ICE issued a notice directing Petitioner to appear in person at a Los Angeles ICE office on September 2, 2026, giving the reason for the appointment as "Interview/Receive immigration paperwork." (Pet. at 8 (the notice); see also Resp'ts Suppl. Br. Ex. A / Dkt. 13-1 at 2.) Petitioner appeared for the appointment and was arrested by ICE. (Pet. at 2, ¶ 6(d).) ICE paperwork noted, "[Petitioner] will remain in ERO custody pending a new hearing." (Answer Ex. A / Dkt. 10-1 at 3 (DHS Form I-213).)

On the date of his arrest, Petitioner was served with a DHS Form I-286,

Notice of Custody Determination, which stated that Petitioner was being detained "pursuant to the authority contained in section 236 of the Immigration and Nationality Act ["INA"] and part 236 of title 8, Code of Federal Regulations." (Resp'ts Suppl. Br. Ex. B / Dkt. 13-1 at 4.) Petitioner appears to have signed the form to acknowledge receipt and request review of the custody determination by an immigration judge ("IJ"). (Id.) However, he has not had a bond hearing before an IJ, even though he has now been detained for two months.

He remains in ICE custody in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 246-916-795 (Colombia), last accessed Nov. 2, 2026). He has not been ordered removed from the U.S.; his removal proceedings remain pending with a master hearing currently scheduled for December, 17, 2026. See EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 246-916-795 (Colombia), last accessed Nov. 2, 2026).

**D. Habeas Proceedings.**

Petitioner filed the present Petition on September 14, 2026. (Dkt. 1.) The Court construes the pro se Petition as raising the following claims:

Ground 1: Petitioner's detention violated his procedural due process rights because he was not provided with a pre-deprivation hearing. (See Pet. at 6 ("Before I appeared, I was not given notice that ICE intended to revoke my release and detain me again, nor was I previously provided with a specific reason justifying my re-detention."); id. at 6-7 ("My re-detention without adequate prior notice and without a meaningful opportunity to challenge the reasons for depriving me of my liberty raises serious concerns regarding my right to due process under the Fifth Amendment….").)

Ground 2: Petitioner's detention violates his substantive due process rights because he is not a flight risk or danger to the community, and there was no material change in circumstances justifying the revocation of his release. (See Pet.

at 6 ("I respectfully maintain that my re-detention lacks sufficient justification. During the time I remained at liberty, I complied with my immigration process, and to my knowledge there was no material change in my circumstances that justified revoking my release."); id. at 7 ("The fact that I voluntarily appeared for my September 2, 2026 ICE appointment demonstrates my intention to continue complying with ICE and with all obligations in my immigration proceedings. … I am willing to comply with lawful and reasonable conditions designed to ensure my appearance and continued participation in my immigration proceedings.").)

The Petition seeks immediate release from custody. (Pet. at 7.)

On September 25, 2026, Respondents answered the Petition. (Dkt. 10.) The Answer stated that Petitioner "appear[ed] to be entitled to request and receive an initial bond hearing pursuant to" Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165 (9th Cir. 2026), and that "[u]nder that statutory detention authority, '[a] § 1226(a) detainee will be released on bond if he demonstrates by a preponderance of the evidence that he is not a flight risk or a danger to the community." (Id. at 2.) However, the Answer also contradicted itself by claiming that Petitioner is not detained under § 1226(a), as follows:

> Petitioner is properly detained pending such potential bond proceedings because Petitioner was re-detained due to a material change of circumstance, specifically on August 9, 2026, Petitioner was arrested for violation of California Penal Code 273.5(a) – Domestic Violence with Injury. Ex. 1 (Form I-213) at 2-3; see also id. at 2 (Petitioner "is subject to mandatory detention under the Laken Riley Act as a result of the aforementioned arrest."); id. at 3 ("On September 2, 2026, ERO Los Angeles served [Petitioner] with a custody redetermination due to a Laken Riley Act arrest. [Petitioner] will remain in ERO custody pending a new hearing.").

(Answer at 2.)

On September 29, 2026, the Court stayed Petitioner's deadline to file a Reply and asked Respondents to file a supplemental brief (1) clarifying whether Respondents were arguing that Petitioner was entitled to a bond hearing under § 1226(a) or subject to mandatory detention without bond under § 1226(c); and (2) if the latter, explaining what provision of § 1226(c) was applicable here and whether Petitioner had ever been notified that he was being detained under that provision. (Dkt. 11.)

Respondents timely filed the supplemental brief on October 6, 2026. ("Resp'ts Suppl. Br." at Dkt. 13.) Respondents argued that Petitioner "is subject to mandatory detention without a bond hearing under the Laken Riley Act and/or 8 U.S.C. § 1226(c)," under the "portion that states: 'crime that results in … serious bodily injury to another person.'" (Id. at 6.) They cite the "nature of the charge" against Petitioner, i.e., domestic violence under California Penal Code § 273.5(a), and have not provided any evidence about the alleged facts underlying the charge. (Id.) They argue that he was adequately informed that this provision applied to him because the Notice of Custody Determination Form stated that "he was being detained pursuant to 8 INA § 236, which is the equivalent to 8 U.S.C. § 1226(c)…." (Id.)

The Court subsequently appointed counsel to represent Petitioner (Dkt. 15), who replied on his behalf (Dkt. 18). Petitioner argues that the domestic violence charge under California Penal Code § 273.5(a) is not a qualifying offense under § 1226(c), as amended by the Laken Riley Act, because "serious bodily injury is not an element of the offense." (Id. at 3-4.) Petitioner also argues that he was not given adequate notice that he was being detained under § 1226(c), because 8 INA § 236 "corresponds to the entire section, 8 U.S.C. § 1226, of which § 1226(c) is only one subsection," and it also includes § 1226(a), under which a noncitizen is entitled to a bond hearing. (Id. at 5.) Alternatively, Petitioner argues that even if § 1226(c) applies, it does not foreclose Petitioner's due process claim, and that he

should be immediately released from custody. (Id. at 8-10.)

## III. DISCUSSION

### A. Petitioner is Entitled to Relief on Ground 1, Because Respondents Violated His Procedural Due Process Rights.

#### 1. Legal Standard.

a. Due Process.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

b. Statutory Framework.

8 U.S.C. § 1226(a) generally "authorizes the federal government to detain aliens pending the completion of their removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1193 (9th Cir. 2022). Detention is not mandatory; the

government may either detain the noncitizen or release them on bond or conditional parole. Id. at 1196 (citing 8 U.S.C. § 1226(a)(1)-(2)).

Section 1226(c), in contrast, "carves out a class of aliens for whom detention is mandatory." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022). Unlike § 1226(a), "§ 1226(c) on its face offers no opportunity for release on bond." Id. (citing Prieto-Romero v. Clark, 534 F.3d 1053, 1066 (9th Cir. 2008)). "Consequently, noncitizens subject to mandatory detention under [§ 1226(c)] are not statutorily eligible for release on bond during the judicial phase of the proceedings, except under the narrow circumstances defined by" § 1226(c)(4). Avilez v. Garland, 69 F.4th 525, 535-36 (9th Cir. 2023) (overruling Casas-Castrillon v. DHS, 535 F.3d 942 (9th Cir. 2008)).[1]

As the Ninth Circuit has explained, ICE regulations do allow a noncitizen detained under § 1226(c) to request a post-detention hearing before an IJ, to determine whether he is properly classified under that provision:

> An individual detained under § 1226(c) may ask an IJ to reconsider whether the mandatory detention provision applies to him, see 8 C.F.R. § 1003.19(h)(2)(ii), but such review is limited in scope and addresses only whether the individual is properly included in a

---

[1] Section 1226(c)(4) provides, "The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien." 8 U.S.C. § 1226(c)(4); see also 18 U.S.C. § 3521 ("witness relocation and protection").

> category of non-citizens subject to mandatory detention based on his criminal history. See generally In re Joseph, 22 I. & N. Dec. 799 (BIA 1999). At a 'Joseph hearing,' a detainee 'may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the [DHS] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.' Demore, 538 U.S. at 514 n. 3. "A determination in favor of an alien" at a Joseph hearing "does not lead to automatic release," Joseph, 22 I. & N. Dec. at 806, because the government retains discretionary authority to detain the individual under § 1226(a). Instead, such a determination allows the IJ to consider granting bond under the § 1226(a) standards, namely, whether the detainee would pose a danger or flight risk if released.

Rodriguez v. Robbins, 804 F.3d 1060, 1078-79 (9th Cir. 2015), rev'd on other grounds sub nom. Jennings v. Rodriguez, 583 U.S. 281 (2018).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court upheld the version of § 1226(c) in effect at that time against a due process challenge. The noncitizen "argued that his detention under § 1226(c) violated due process because the INS [now DHS] had made no determination that he posed either a danger to society or a flight risk." Id. at 514. The Supreme Court rejected this argument, reasoning, "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings." Id. at 513. The Supreme Court also rejected the noncitizen's argument that due process required "individualized bond hearings," reasoning, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal," and the "evidence Congress had before

it certainly supports the approach it selected…." Id. at 528.

Importantly, the Supreme Court noted that: (1) the noncitizen "did not dispute the validity of his prior convictions," which were the basis of his detention under § 1226(c), and that these convictions "were obtained following the full procedural protections our criminal justice system offers"; (2) the noncitizen "did not dispute [the government's] conclusion that he [was] subject to mandatory detention under § 1226(c)"; (3) the noncitizen "conced[ed] that he was deportable" and "forwent" a Joseph hearing; (4) cited evidence that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." Id. at 514, 530.

After Demore was decided, Congress passed the LRA, which added subsection (1)(E) to § 1226(c). That subsection provides that a noncitizen is subject to mandatory detention if he or she:

> (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
>
> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or ***any crime that results in death or serious bodily injury to another person***,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(E)(i)-(ii) (emphasis added). The amended statute also provides, "For purposes of paragraph (1)(E), the terms 'burglary', 'theft', 'larceny', 'shoplifting', 'assault of a law enforcement officer', and '***serious bodily***

***injury***' have the meanings given such terms in the jurisdiction in which the acts occurred." 8 U.S.C. § 1226(c)(2) (emphasis added).

**2. Analysis.**

a. Respondents' application of § 1226(c) to Petitioner violated his due process rights as applied on the facts of this case.

The initial Petition in this case argued that Respondents violated Petitioner's procedural due process rights by taking him into immigration custody without a pre-deprivation hearing before a neutral decisionmaker, such as an IJ. Consistent with what many district courts around the country have held, Petitioner argued that he had a protected liberty interest arising from ICE's 2023 decision to release him from custody. This Court agrees that "the government's decision to release [Petitioner] create[d] an implicit promise, upon which [he could] rely, that [his] liberty [would] be revoked only if [he] failed to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2, 2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases).

Respondents appear to be arguing that Petitioner's liberty interest lessened or vanished, or that *post*-deprivation procedures are now sufficient to satisfy due process, after Petitioner was arrested on suspicion of domestic violence under California Penal Code § 273.5(a) in August 2026. At that point, they argue, he became subject to mandatory detention under § 1226(c)(1)(E)(ii).

Even assuming Petitioner is properly subject to mandatory detention under this provision—an issue it is unnecessary for this Court to decide at this stage—Petitioner has shown that Respondents violated his procedural due process rights on the facts of this case.

There is no evidence that Petitioner was ever given notice that he was being

held under § 1226(c) until Respondents filed their Answer in this case. None of the paperwork served on Petitioner when he was arrested on May 19, 2026, indicated that he was being held under § 1226(c). Although Respondents point to the Notice of Custody Determination form, that form cites only "section 236 of the [INA]," which is codified at 8 U.S.C. § 1226. (Resp'ts Suppl. Br. Ex. B / Dkt. 13-1 at 4.) 8 U.S.C. § 1226 includes both § 1226(a), the section under which detainees are entitled to a bond hearing, and § 1226(c), a section under which they are not. Moreover, the form does not mention Petitioner's recent domestic violence arrest.

Even if Petitioner could have requested a post-deprivation Joseph hearing, it is unclear how he could have done so when he was never informed of the basis for his detention. The paperwork served on Petitioner does indicate that he requested IJ review of ICE's custody determination (see Resp'ts Suppl. Br. Ex. B / Dkt. 13-1 at 4), and Respondents do not explain why such a hearing was never held. On this record—where Petitioner (1) was not notified of the basis for his detention until nearly a month after his arrest; (2) was only notified at all because he filed a federal habeas petition challenging that detention; and (3) has colorable legal arguments that he is not subject to mandatory detention under § 1226(c)—the availability of a post-deprivation Joseph hearing is insufficient to protect Petitioner's due process rights.

The record in this case demonstrates why—under the second Mathews factor—the risk of erroneous deprivation is significant absent a pre-deprivation hearing. Initially, Respondents' Answer only stated that Petitioner was subject to detention under § 1226(c), without explaining which provision of § 1226(c) applied to Petitioner's domestic violence arrest or why. After the Court requested further briefing, Respondents argued that the "nature of the charge" renders it a "crime that results in death or seriously bodily injury to another person" under § 1226(c)(1)(E)(ii). Respondents do not cite any authority for the proposition that

an arrest or charge under California Penal Code § 273.5(a) necessarily or always qualifies as such an offense. Based on the statutory definition, it appears possible to inflict a "traumatic condition" that does not constitute "serious bodily injury." See Cal. Pen. Code § 237.5(a) (making it a felony to "willfully inflict[] corporal injury resulting in a traumatic condition upon" the offender's spouse, cohabitant, or certain family members); id., § 273.5(d) (defining "traumatic condition" as "a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force"). Respondents also do not address whether Petitioner meets the first requirement of § 1226(c)(1)(E)(i), i.e., whether Petitioner "is inadmissible under paragraph 6(A), 6(C), or (7) of section 1182(a) of this title." 8 U.S.C. § 1226(c)(1)(E)(i).

Requiring the government to hold a pre-deprivation hearing would require DHS to demonstrate why they believe Petitioner is subject to detention under § 1226(c), at a stage of the proceedings when Petitioner has superior access to counsel and evidence about the circumstances of his pending criminal charge. As noted above, it is unclear whether criminal charges were ever filed based on this arrest and, if so, whether they remain pending. If criminal authorities chose not to charge him or the charge was dismissed, he would no longer be subject to mandatory immigration detention under § 1226(c). See Osorio v. Albarran, No. 26-cv-08783, 2026 WL 2741855, at *3, 2026 U.S. Dist. LEXIS 210306, at *6-7 (N.D. Cal. Sept. 16, 2026) (collecting cases concluding that the LRA's "mandatory detention requirement does not apply if the noncitizen's criminal charges have been dismissed and the noncitizen is no longer under arrest"); Castellon v. DHS, No. 26-cv-04245-AJR, 2026 WL 2434858, at *3, 2026 U.S. Dist. LEXIS 186607, at *7-8 (C.D. Cal. Aug. 19, 2026) ("The relevant section of the Laken Riley Act that imposes mandatory detention when an alien is in removal proceedings and 'is arrested for' a list of enumerated offenses, including theft, only applies to aliens

who are ***currently*** in custody facing charges for such offense.").

This type of as-applied due process challenge is not foreclosed by Demore, which considered a facial challenge to § 1226(c). Moreover, after Demore was decided, Congress amended § 1226(c) via the LRA, making it applicable to noncitizens with *pending* criminal charges, not just those with criminal *convictions*. Significantly, the Demore court noted that the noncitizen's convictions had been "obtained following the full procedural protections our criminal justice system offers." 538 U.S. at 513. Here, Respondents have not provided any evidence that charges were filed or remain pending, much less that Petitioner was convicted of the alleged offense. At present, Petitioner has been detained for two months without any removal decision by an IJ—already more time than what was contemplated by the Supreme Court in Demore—and does not even have a merits hearing scheduled. See 538 U.S. at 530 (noting that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal").

The third Mathews factor—the government's countervailing interest—does not outweigh the other factors on the facts of this case. While the government has an interest in protecting the public from noncitizens who may be criminals, that interest is lessened where, as here, the noncitizen has only been arrested for the crime, and there is no evidence that they have been convicted. There has been no individualized finding that Petitioner is a danger to the public. Indeed, when DHS released him in 2023, they necessarily determined that he was not a danger.

In sum, the Court finds that Respondents violated Petitioner's due process rights by (1) detaining him without any pre-deprivation process, (2) based on a criminal arrest, and (3) without promptly notifying him that he was being detained under § 1226(c), which deprived him of any meaningful post-detention remedy. These facts, taken together, demonstrate that Petitioner was deprived of sufficient

notice and an opportunity to be heard regarding whether he is properly detained during the pendency of his immigration proceedings.

b. The proper remedy is release from custody, not a post-deprivation hearing.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing.

Many courts have found that a post-detention bond hearing is insufficient in similar contexts. See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief."). In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 882-83 (C.D. Cal. Jan. 23, 2026); Nieves v. Mullin, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *4, 2026 U.S. Dist. LEXIS 77391, at *11 (C.D. Cal. Apr. 1, 2026); Fernandez v. Semaia, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7, 2026 U.S. Dist. LEXIS 10909, at *25 (C.D. Cal. Jan. 13, 2026).

Based on the weight of this persuasive authority, the Court will enter both

types of relief here.

**B. Ground 2 is Dismissed as Moot.**

Granting Ground 1 of the Petition, as described above, grants all of the relief requested therein. Accordingly, the Court declines to reach Ground 2 of the Petition, which will be dismissed as moot.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Ground 1 of the Petition is granted, and Ground 2 is dismissed as moot.
2. Respondents shall **immediately release** Diego Alberto Sierra Guerrero (A# 246-916-795) from custody.
3. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.
4. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that: (a) Petitioner is subject to detention under § 1226(c); or (b) Petitioner is subject to detention under § 1226(a) because (i) he is a flight risk or a danger such that his physical custody

//

//

//

//

//

//

//

//

is required, or (ii) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[2]

DATED: November 3, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

[2] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).